UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Roque "Rocky" De La Fuente,<br><br>    Plaintiff,<br><br>vs.<br><br>Steve Simon, in his official capacity as the Secretary of State of the State of Minnesota,<br><br>    Defendant. | Civil No. 19-CV-2995 (DSD/HB)<br><br>**DEFENDANT'S MEMORANDUM<br>IN SUPPORT OF<br>MOTION TO DISMISS** |

Plaintiff Roque De La Fuente has no constitutional right to force the Republican Party of Minnesota to associate with him. The interests of the State of Minnesota, which include protecting its political parties' right to freedom of association, far outweigh any actual rights De La Fuente can cite in this matter. Because De La Fuente's claims thus fail on their merits, and because the Minnesota Supreme Court has issued a final decision on the merits rejecting those claims, this Court should dismiss his complaint.

## FACTS

Minnesota law provides for a presidential nomination primary to be held on March 3, 2020. Minn. Stat. § 207A.11(a), (b); Black Aff. ¶ 3. Each major political party taking part in the nomination primary is required to determine the names of the candidates for its presidential nomination that will be printed on primary ballots. Minn. Stat. § 207A.13, subd. 2(a). Each party may also determine whether its presidential nomination primary ballot will include (1) an option for voters to support sending uncommitted delegates to the party's national convention and/or (2) a space for voters to cast votes for write-in candidates. *Id.*, subd. 1(c). The chair of each participating party

must send Defendant Steve Simon, in his official capacity as Secretary of State ("the Secretary"), the names of the party's candidates, as well as the party's determinations regarding uncommitted delegates and write-in candidates, no later than 63 days before the primary. *Id.*, subds. 1(c), 2(a). In the current election cycle, the 63-day deadline fell on December 31, 2019. *See id.* Once the party submits its list of candidate names to the Secretary, state law prohibits changes to the list. *Id.*, subd. 2(a).

In October 2019, the Republican Party of Minnesota submitted its authorized list of candidates for the 2020 presidential nomination primary in a letter to the Secretary. (Black Aff. ¶ 4, Ex. 1 (Republican Party letter).) The letter stated that the sole candidate name that party authorized to have listed on its presidential nomination primary ballot was Donald J. Trump. (*Id.*)

In November, Plaintiff Roque De La Fuente filed this lawsuit, alleging that he is a candidate for the Republican nomination for President. (Compl. ¶ 5.) Because the Republican Party's October letter to the Secretary did not state that the party authorized De La Fuente's name to be placed on the party's ballot for the March 3 presidential nomination primary, his name will be omitted from the ballot. *See* Minn. Stat. § 207A.13, subd. 2(a). As a result, De La Fuente challenges the constitutionality of Minn. Stat. § 207A.13 as applied to exclude him from the ballot. (*Id*. ¶¶ 39-49.)

In December, De La Fuente and a Minnesota resident who claimed he desired to vote for De La Fuente in the primary filed a ballot-error petition in the Minnesota Supreme Court. (Black Aff. ¶ 6, Ex. 2.) The petition repeated the constitutional claims alleged in this lawsuit and asked the state court to order De La Fuente's name be placed

2

on the Republican primary ballot. (Ex. 2 at 18-26 ¶¶ 68-112, 27 ¶ (D).) The petition named the Secretary as the respondent. (*Id.* at 4 ¶ 7.)

As required by a scheduling order issued by the state court, De La Fuente and the Secretary submitted briefs and provided oral argument. (Black Aff. ¶¶ 7, 11, Ex. 3 (Minnesota Supreme Court scheduling order).)

On January 9, the Minnesota Supreme Court denied the petition, holding that the petitioners' claims lack legal merit. *De La Fuente v. Simon*, No. A19-1994, 2020 WL 230178, at *2 (Minn. Jan. 9, 2020). The court stated that it would subsequently issue an opinion explaining its decision. *Id.*

## ARGUMENT

The Minnesota Supreme Court has rejected the claims in De La Fuente's complaint on their merits after providing him a full and fair opportunity to litigate the claims. Res judicata thus bars De La Fuente from now proceeding with the claims in a different forum. Moreover, even if the state court had not already ruled in this matter, De La Fuente's claims fail as a matter of law. He has thus failed to state a claim for which relief can be granted.

### I. RES JUDICATA BARS DE LA FUENTE'S CLAIMS.

The doctrine of res judicata provides that a final judgment on the merits of a lawsuit precludes the parties to the suit from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Because federal law requires courts to give full faith and credit to judicial decisions issued by state courts, federal courts give preclusive res judicata effect to state-court judgments "whenever the

3

courts of the State from which the judgments emerged would do so." *Id.* at 96 (citing 28 U.S.C. § 1738).

The law of the forum that issued the first decision controls the res judicata analysis. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Because the Minnesota Supreme Court issued the first court decision on De La Fuente's constitutional claims, Minnesota's res judicata standards apply. *See id.* "Under Minnesota law, res judicata constitutes an absolute bar to a later claim when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." *Id.* at 1151-52 (citing *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)).

The facts of the current case indisputably meet Minnesota's standard for res judicata. First, De La Fuente's state petition involved all of the same facts and legal claims as the current complaint: specifically, both cases are founded on De La Fuente's contention that he has a First and Fourteenth Amendment right to a place on the Republican ballot in Minnesota's March 3 presidential nomination primary. Second, De La Fuente was a petitioner in the state petition, and the Secretary was the respondent. Third, the Minnesota Supreme Court issued a final judgment on the merits of De La Fuente's petition, holding that his claims "lack legal merit." *De La Fuente*, 2020 WL

230178, at *2.[1] And fourth, the state court afforded De La Fuente a full and fair opportunity to litigate his claims: the court accepted his petition initiating the proceeding, reviewed his brief on the merits, and allowed him oral argument before holding his legal claims meritless.

For these reasons, the Minnesota Supreme Court's final judgment on the merits of De La Fuente's ballot-error petition precludes him from relitigating the claims in the instant complaint. The complaint should therefore be dismissed.

## II. DE LA FUENTE'S CLAIMS FAIL ON THEIR MERITS.

Even if res judicata did not apply, the Court should dismiss the complaint on its merits. In short, the core right implicated by this case is the Republican Party's First Amendment right to freedom of association—and De La Fuente has no legal authority to force the Republican Party to associate with him by placing his name on the party's presidential nomination primary ballot. The challenged provision of Minnesota's election law exists to protect political parties' fundamental right to freedom of association; it is therefore constitutional.

---

[1] Press accounts suggest that De La Fuente may seek certiorari review of the state court's decision in the United States Supreme Court. (*See* Brian Bakst, *MN Supreme Court ruling: Primary ballot will stay as it is*, MPR News (Jan. 9, 2020), https://www.mprnews.org/story/2020/01/09/mn-supreme-court-grapples-with-primary-ballot-choices (reporting state court decision and stating that Plaintiff's counsel "vowed to take the fight to the U.S. Supreme Court if necessary").) But even if he seeks such review, it will not affect the finality of the state supreme court decision: under Minnesota law a judgment is final for res judicata purposes when it is entered, notwithstanding a pending appeal. *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007); *see also Thornes v. City of Waldorf*, No. 13-546, 2014 WL 4829136, at *7 (D. Minn. Sept. 29, 2014) (following *id.*).

**A. The Challenged Statute.**

The instant petition challenges Minn. Stat. § 207A.13, subd. 2. (Compl. ¶¶ 43, 49.) That subdivision states:

> **Candidates on the ballot.** (a) Each party must determine which candidates are to be placed on the presidential nomination primary ballot for that party. The chair of each party must submit to the secretary of state the names of the candidates to appear on the ballot for that party no later than 63 days before the presidential nomination primary. Once submitted, changes must not be made to the candidates that will appear on the ballot.
>
> (b) No later than the seventh day before the presidential nomination primary, the chair of each party must submit to the secretary of state the names of write-in candidates, if any, to be counted for that party.

Minn. Stat. § 207A.13, subd. 2 (2018). In the instant case, the Minnesota Republican Party notified the Secretary in writing on October 25, 2019, that the only candidate name that will appear on the party's ballot in the presidential nomination primary is the name of President Donald J. Trump. As it stated in a subsequent letter, however, the party will permit voters to cast write-in votes for other candidates. (Black Aff. ¶ 9, Ex. 4.)

**B. Section 207A.13 is Subject to Limited Scrutiny, Because the State's Important Regulatory Interests Far Outweigh the Alleged Damage to De La Fuente's Rights.**

Under the United States Constitution, states retain the power to regulate their own elections. U.S. Const. Art. I, § 4; *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). State election regulations inevitably impose some burdens on individuals' rights to vote and to associate with others for political purposes. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). As a result, courts do not broadly subject election regulations to strict scrutiny; doing so "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick*, 504 U.S. at 433. Instead, courts tailor the level of

scrutiny applied to each case according to the particular details of the private rights and government interests that are implicated:

> [A] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interest put forward by the state as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's right.

*Id.* at 434. When state law subjects First and Fourteenth Amendment rights to "severe" restrictions, courts apply strict scrutiny. *Id.* But when the law only imposes restrictions on constitutional rights that are reasonable and nondiscriminatory, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.*

### 1. The burden on De La Fuente's rights is de minimis.

In this case, the balancing test described above tilts overwhelmingly in favor of a limited standard of review, because there is no clear legal basis for De La Fuente's assertions that he possesses constitutional rights that are relevant to this case at all. De La Fuente cites no case law, and the Secretary is aware of none, holding either that (1) an individual has a First or Fourteenth Amendment right to run in a partisan presidential nomination primary or (2) a voter has a First or Fourteenth Amendment right to vote for a

particular candidate in such a primary.[2] Indeed, federal courts have held that such alleged rights are "considerably attenuated and possibly nonexistent." *Duke v. Massey*, 87 F.3d 1226, 1233 (11th Cir. 1996) ("*Duke III*"); *see also id.* at 1232-33 (holding that candidate "does not have a First Amendment right to express his beliefs as a presidential candidate for the Republican Party"); *Duke v. Cleland*, 954 F.2d 1526, 1530-31 & n. 6 (11th Cir. 1992) ("*Duke I*") (rejecting candidate's allegation that "he has a right to associate with an 'unwilling partner,' the Republican Party," and holding that "[i]ndeed a strong argument could be made that there is no right to vote for any particular candidate in a party primary, because the party has the right to select its candidates"); *Belluso v. Poythress*, 485 F. Supp. 904, 912 (N.D. Ga. 1980) (holding candidate's "claimed need to 'associate' with an unwilling partner, the Republican party in Georgia, is not a first amendment right").

Notably, Minnesota's presidential nomination primary is like no other election proceeding created by the state's law. In every other election in Minnesota, the candidate who receives the most votes is thereby entitled to either (1) take office or (2) have her name entered on ballots in a subsequent Minnesota election. But winning a presidential nomination primary carries with it no such direct consequence. Instead, that primary

---

[2] No plaintiff in the current lawsuit is a Minnesota voter, and De La Fuente has no standing to state constitutional claims on behalf of such a voter. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). But even if the complaint were amended to join a Minnesota voter as an additional plaintiff, any claim that the voter has a constitutional right to force De La Fuente's name onto the March 3 ballot would nonetheless fail for reasons explained in this memorandum.

merely yields a particular variety of *information*—specifically, numbers of votes received by the respective candidates—that the major parties then use within their private nominating processes. *See Belluso*, 485 F. Supp. at 912 (noting that presidential primary is "a preferential primary that has dubious effect as opposed to a general election that has finality"). As a federal court hearing a constitutional lawsuit substantially identical to the instant petition noted,

> there is much truth in the [state's] characterization of [its] Presidential Preference Primary as a "beauty contest." The balloting merely effects a recommendation to the parties, which are free to accept or ignore the results. The plaintiffs' constitutional interest in [the would-be-candidate plaintiff's] inclusion is decreased because the importance of the primary lies within the discretion of the party.

*Id*. The same logic applies to the instant case, and as a result De La Fuente's constitutional interests in appearing on the nomination primary ballot are at best severely attenuated.

Moreover, De La Fuente is not in fact being denied the right to run for President in Minnesota: state law permits him to run in the November 2020 general election as a minor-party or independent candidate, even if he is not on the ballot for the March nomination primary. *See* Minn. Stat. §§ 204B.07, subd. 2 (requirements for minor-party and independent candidates for President to appear on ballots); .09, subd. 3(b) (requirements for individuals running for President as write-in candidates). In turn, any voter who wishes to vote for De La Fuente for President retains the right to do so in November if De La Fuente fulfills these procedural requirements. Thus, this case does not involve the question of whether De La Fuente is being permitted to run for President;

9

instead, the question before the Court is only whether he has the right to force his way into the Republican Party's presidential nominating process.

### 2. The state has a compelling interest in avoiding "laundry list" ballots and protecting political parties' right to free association.

For the above reasons, the actual damage that the challenged statute imposes on De La Fuente's constitutional rights is severely limited, if not nonexistent. Under these circumstances, "the State need not establish a compelling interest to tip the constitutional scales in its direction." *Burdick*, 504 U.S. at 439. Instead, the state need only establish that its legitimate interests are "sufficient to outweigh the limited burden" that the challenged statute imposes on De La Fuente. *Id*. at 440. This standard is easily met in this case: the state's interest in limiting the candidates on the March 3 ballot to those named by the major political parties is clear and compelling.

First, the state has a legitimate interest in avoiding a "laundry list" ballot that contains the name of every would-be candidate, no matter how frivolous her candidacy. *Clements v. Fashing*, 457 U.S. 957, 964-65 (U.S. 1982) (holding that states "have important interests in protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections"); *see also Burdick*, 504 U.S. at 438 (holding that purpose of elections is choosing candidates for public office, not some "more generalized expressive function[, which] would undermine the ability of States to operate elections fairly and efficiently").

If every individual were constitutionally guaranteed a place on the March 3 ballot based on the mere assertion that she, like De La Fuente, wanted to run in a particular party's nomination primary, both Minnesota voters and their election system would suffer from the lengthy lists of candidates that would inevitably result.

More importantly in the current case, however, the state has a compelling interest in protecting the major parties' constitutional freedom of association. A political party is a private association that holds a First Amendment right to identify the people who constitute the association and to limit its membership to those people. *Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107, 121-22 (1981). As such, parties have the right to choose their party leaders without interference from federal or state governments. *Id.* at 121-26; *see also Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 166-68 (5th Cir. 2009) (rejecting constitutional challenge to loyalty oath required by state party for place on party's presidential nomination primary ballot). Further, the First Amendment grants political parties the right to determine their own membership, which includes the right to disregard the electoral preferences of nonmembers. *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 215 n. 6 (1986) (holding that a "nonmember's desire to vote in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications"); *Haase v. Silver*, 140 F. App'x 274, 277 (2nd Cir. 2005) (holding that "an individual who does not fit within the parameters determined by a party does not have an absolute right to participate in that party's primary election"). States have a compelling interest in protecting these associational

rights, not least within the context of determining the names to be printed on ballots in a presidential nomination primary. *Duke III*, 87 F.3d at 1234.

The *Burdick* balancing test thus establishes that the challenged Minnesota statute is subject only to limited scrutiny. First, the burden placed on De La Fuente's constitutional rights is at best attenuated and at worst nonexistent, given that there is no evident basis for his contention that he has a constitutional right to run in a political party's presidential nomination primary. Second, the state's countervailing interest in avoiding "laundry list" ballots and in preserving political parties' freedom of association is clear and compelling.

### C. Section 207A.13 is a Reasonable and Nondiscriminatory Provision that is Justified by the State's Important Regulatory Interests.

For the reasons explained above, under *Burdick* the candidate restrictions imposed by Minn. Stat. § 207A.13, subd. 2, must be upheld if they are reasonable, nondiscriminatory, and justified by an important regulatory interest of the state. *Burdick*, 504 U.S. at 434. And on substantially the same grounds that are discussed above, the challenged restrictions readily pass constitutional muster.

The restrictions are reasonable, in large part, because they do not bar De La Fuente from running for President or prevent any eligible individual from voting for him. *See* Minn. Stat. §§ 204B.07, subd. 2 (requirements for minor-party and independent candidates for President to appear on ballots); .09, subd. 3(b) (requirements for individuals running for President as write-in candidates). They are nondiscriminatory because, by directly granting each political party the authority to determine the list of

candidates it agrees to associate with for the purposes of a presidential nomination primary, the restrictions are precisely tailored to serve the state's compelling interest in protecting the parties' right to free association. Finally, the state's need to both protect that right and avoid "laundry list" ballots constitutes an important regulatory interest. De La Fuente's claims therefore fail.

This determination finds strong support in the decisions of federal courts that have reviewed similar lawsuits pertaining to presidential primary ballots. Most notably, in 1992, self-declared Republican presidential candidate David Duke and three voters who supported him challenged a Georgia statute under which state officials had denied Duke a place as a Republican candidate on Georgia's presidential nomination primary ballot. *Duke I*, 954 F.2d at 1527-28. After the state defendants prevailed in district court, on appeal the Eleventh Circuit applied the *Burdick* test and rejected Duke's constitutional claims, holding that the candidate's interests under the First and Fourteenth Amendments "do not trump the Republican Party's right to identify its membership based on political beliefs nor the state's interests in protecting the Republican Party's right to define itself." *Duke III*, 87 F.3d at 1231-33. The court also rejected the plaintiff voters' claims, noting that they had "failed to offer any authority suggesting that they have a right to vote for their candidate of choice as a republican in a nonbinding primary." *Id.* at 1233. It determined that "any burden on these voters is considerably attenuated and possibly nonexistent." *Id.* (internal quotation marks omitted). Finally, the Eleventh Circuit held that the plaintiffs' interests, to the extent they even existed, were outweighed by the state's "compelling interest in protecting political parties' right to define their

13

membership" and "significant interest in structuring and regulating elections in order to facilitate order, honesty and fairness." *Id*. at 1234.

An earlier Georgia federal decision reached the same result as *Duke*. In *Belluso v. Poythress*, a federal district court denied the plaintiffs' motion for a preliminary injunction in a case brought by a would-be candidate and two individuals wishing to vote for him in Georgia's 1980 Republican presidential nomination primary. 485 F. Supp. at 906, 914. The court held that the plaintiff candidate had no constitutional right to associate with the Republican Party as his "unwilling partner," that "the right of [the candidate's] supporters to vote for him in the general election stands unaffected," and that Georgia's interest in protecting the party's rights and avoiding "laundry list" ballots justified excluding the candidate from the primary. *Id.* at 911-13.

The instant lawsuit is indistinguishable from *Duke* and *Belluso*. This Court should dismiss the suit for the same reasons that the federal courts rejected the plaintiffs' constitutional claims in those cases. First, a state law barring individuals from running in a presidential nomination primary for the nomination of an unwilling political party imposes little if any burden to any individual's actual constitutional rights; and second, states have important regulatory interests in protecting political parties' right to freedom of association and in restricting ballot access to legitimate and non-frivolous candidates.

## CONCLUSION

For the above reasons, Respondent respectfully requests that the Court dismiss Plaintiff's complaint.

Dated: January 24, 2020

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Nathan J. Hartshorn**
NATHAN J. HARTSHORN
Assistant Attorney General
Atty. Reg. No. 0320602

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2134
(651) 757-1252 (Voice)
(651) 297-1235 (Fax)
nathan.hartshorn@ag.state.mn.us

ATTORNEY FOR STEVE SIMON, IN HIS OFFICIAL CAPACITY AS THE MINNESOTA SECRETARY OF STATE